| | |
|---|---|
| RAFIQ A. SABIR | 05 Cr. 673-2 (LAP) |
| v. | 12 Civ. 8937 (LAP) |
| UNITED STATES | |

RECEIVED NOV 07 2013
LORETTA A. PRESKA
CHIEF U.S. DISTRICT JUDGE
S.D.N.Y.

DOC # 198

NOV - 6 2013
U.S. DISTRICT COURT
S.D. of N.Y.

NOV - 8 2013
PRO SE OFFICE

NOV - 1 2013
RECEIVED
PRO SE OFFICE

## MOTION FOR A NEW TRIAL

### BASED ON NEW EVIDENCE

Based on Federal Rules of Criminal Procedure 33, a defendant may make a motion for a new trial based on new evidence.

Defendant, Rafiq Sabir, moves this Court under Rule 33 of the Federal Rules of Criminal Procedure for an order granting defendant a new trial. Defendant, Rafiq Sabir, is entitled to a new trial on the ground of newly-discovered evidence. As more fully shown in the accompanying Sworn Statements of Hassan Shareef and Martin Clark Hindess.

Despite due diligence in the pretrial investigation of this case and considerable efforts to discover and obtain the use of all relevant evidence in this matter, Rafiq Sabir was ignorant of and unable to present certain evidence at the trial.

The newly discovered evidence was discovered after the verdict was returned in this case, when Mr. Shareef came forward in his letter, unsolicited, with knowledge that shows Rafiq Sabir's actual innocence. The newly-discovered evidence is not merely cumulative of evidence already in the record, or merely impeaching in character, but is material and of such character that if received at trial it would probably have resulted in a different verdict.

BACKGROUND:

In May 2005 Dr. Rafiq Sabir was arrested and charged with conspiracy to support al-Qaeda by providing himself as a physician to treat wounded combatants. In May 2007 following a trial lasting several weeks, Dr. Sabir was found guilty and subsequently sentenced to 300 months in prison. The verdict was affirm in February 2010, and in December 2011 the Supreme Court denied certiorari. On November 30, 2012 Dr. Sabir filed a pro se habeas corpus motion which is currently pending. In July 2013 Dr. Sabir filed a motion for summary judgment and in September 2013 Dr. Sabir filed a motion for default judgment as the government did not respond to the motion for summary judgment. Now comes the Defendant Dr. Sabir to petition for a new trial based on new evidence and failure of Defense Counsel to investigate and discover this evidence out of negligence.

NEW EVIDENCE:

Sworn statements of Hassan Shareef (Exhibit C) and Martin Clark Hindess (Exhibit B), if believed by the jury, would demonstrate that Dr. Sabir could not have been guilty of conspiracy and a substantive act in order to provide material support to al-Qaeda, in violation of §2339B of the criminal code. In order for the jury to have found Dr. Sabir guilty of these crimes it would have to have found that Dr. Sabir knowingly conspired to and attempted to provide material support to al-Qaeda. At trial Dr. Sabir testified that he would not have knowingly committed these crimes. The jury must have concluded that this was self-serving untruthful testimony; however, Dr. Sabir informed defense counsel Edward D. Wilford

over a year before the trial that he did not speak arabic and that he did not believe al-Qaeda was a real organization. [Exhibit A, 19] Defense counsel told Dr. Sabir not to tell anyone that he did not believe al-Qaeda was a real organization because they would think he was crazy; [Exhibit A, 21] due to negligence defense counsel failed to investigate Dr. Sabir's sincerely held belief as a defense. Had he investigated he would have found these witnesses and they would have testified at trial. [Exhibit A, 23] And had the jury believed their testimony, it could not have found that Dr. Sabir knowingly conspired to and attempted to provide material support to al-Qaeda. In deciding whether to grant a new trial, a district court need not view evidence in light most favorable to [the] verdict, but instead may weigh evidence and evaluate credibility of witnesses. United States v. Pruett, 501 F.3d 976 (8th Cir. 2007).

EVIDENCE AT TRIAL:

The only time al-Qaeda was even mentioned in all the recorded conversations presented at trial was when Dr. Sabir took bay'ah (religious pledge) with former undercover FBI agent Ali Soufan on 20 May 2005. At no time did Mr. Soufan explain to Dr. Sabir that the bay'ah was for al-Qaeda. The jury concluded that Dr. Sabir had knowingly conspired to an attempted to provide material support to al-Qaeda based on the bay'ah, which included "al-Qaeda" as the last term of the bay'ah. Dr. Sabir testified that he did not recognize this because the bay'ah was in arabic and he did not understand that Mr. Soufan was saying "al-Qaeda". The government also inferred that Dr. Sabir had to have known because allegedly coconspirator Tarik Shah knew, and because Mr. Soufan mentioned "Sheikh Osama", "Abu Abdullah", and

"Dr. Ayman" on 20 May 2005 in the recorded conversation prior to the bay'ah.

The fact that al-Qaeda was never mentioned anywhere else on any recorded conversation other than in the bay'ah raises serious doubt that codefendant Tarik Shah knew before 20 May 2005 that Mr. Soufan allegedly represented al-Qaeda. The only evidence that Tarik Shah might have told Dr. Sabir anything was a discussion between the confidential informant and Tarik Shah in March or April of 2004. Prior to that Tarik Shah repeatedly asserted that he did not tell Dr. Sabir anything. When firmly confronted by the confidential informant, who asked Shah "Did you tell the Doctor?", Mr. Shah stated equivocally, "I saw him face-to-face", which, although true, did not assert that he told Dr. Sabir anything.

The government's inferences that mentioning "Sheikh Osama", "Abu Abdullah", and "Dr. Ayman" prove that Dr. Sabir knew he was dealing with a representative of al-Qaeda are unreasonable inferences on top of inferences. The first set of inferences is that Dr. Sabir was familiar with the meaning of those names, which the government did not show at trial, nor could they have. The second set of inferences is that, if Dr. Sabir did not know who these names referred to then he would have asked. There is no basis for these inferences either; this a matter of human behavior, and even if reasonable does not permit additional inferences to be reasonably made on top of them. The final set of inferences on top of inferences is that therefore Dr. Sabir had to have known he was dealing with an al-Qaeda operative.

Inferences on top of inferences is not evidence, and cannot be used as proof of a major element of a crime.

At sentencing the government argued that Dr. Sabir obstructed justice when he testified at trial that he did not understand arabic. The proof, according to the government, was that the jury did not believe Dr. Sabir and consequently found Dr. Sabir knowingly conspired to and attempted to provide material support to al-Qaeda. The reasoning of the government was, that had the jury believed Dr. Sabir did not understand arabic, then it would not have found Dr. Sabir guilty.

ANALYSIS:

Before trial Dr. Sabir told defense counsel Edward D. Wilford that he did not speak arabic and that he did not believe al-Qaeda was a real organization. [Exhibit A, 19] Mr. Wilford was negligent in not even trying to get witnesses to testify to these facts at trial. Dr. Sabir was kept in solitary confinement from the day of his arrest until his [Exhibit A, 10] transfer to FCI Ashland, where he is designated to serve out 25 years in prison. Throughout this time he was not even allowed access to the prison law library [Exhibit A, 10] in order to discover how he could participate in his own defense. Dr. Sabir had no idea how to defend himself and what factual witnesses could provide until he reached FCI Ashland and was able to begin his own legal and factual investigation.

Before trial Dr. Sabir gave defense counsel an extensive list of possible witnesses, [Exhibit A, 11] and defense counsel did little or no investigation to utilize it. Cocounsel Natali Todd promised Dr. Sabir an arabic

language expert that would have shown Dr. Sabir never even said "al-Qaeda" when taking the bay'ah because he did not know that that was what Mr. Soufan was saying. However, defense counsel failed to fulfill that promise, and then pressured Dr. Sabir into signing a stipulation from the government that translations of the conversation of 20 May 2005 from arabic to english provided by FBI translators was accurate. Defense counsel was notified by Dr. Sabir that he never said "al-Qaeda", and so at least that portion of the translation should have been in contention. (see habeas corpus petition for details)

In sworn statements, both Hassan Shareef and Martin Clark Hindess attest that Dr. Sabir in fact did not understand arabic; and both [Exhibit B and C] are willing to testify to that if called as witnesses for Dr. Sabir. [Exhibit A, 23] Furthermore, Hassan Shareef attests that Dr. Sabir told him that he (Dr. Sabir) did not believe al-Qaeda was a real organization. [Exhibit C] At sentencing, the government asserted that, had the jury believed Dr. Sabir's testimony that he did not understand arabic, then it would not have found him guilty. It was only due to the negligence of Mr. Wilford in failing to investigate these facts that the jury concluded Dr. Sabir's testimony to have been untruthful and self-serving. Had Mr. Wilford investigated he would have discovered these witnesses and many others that could have testified that Dr. Sabir did not understand arabic.

At the misadvice of defense counsel, Dr. Sabir did not testify that [Exhibit A, 21] he did not believe al-Qaeda was a real organization. Dr. Sabir knew that he had told this to many people prior to hes arrest, but he could not remember any particular person with whom he discussed this. [Exhibit A, 20]

Exhibit A, 8, 9, 12, 17, 22

Mr. Shareef's attestation comes forth totally unsolicited. Dr. Sabir had been writing to Mr. Hindess from around the time of his trial, initiated by Mr. Hindess and mostly consisting of encouragement and psychological and spiritual support from Mr. Hindess. Both Mr. Hindess and Mr. Shareef were living and working in Riyadh, Saudi Arabia while Dr. Sabir was living and working there. Riyadh mostly has no street addresses, so it is impossible to know how to reach someone by mail there.

Exhibit A, 5, 13, 14
Exhibit A, 7, 8

When Mr. Hindess began writing he provided a post office box address in Riyadh for Dr. Sabir to send letters back to him. Mr. Shareef is a United States citizen, and Dr. Sabir had no idea whether or not he was even still in Saudi Arabia, or if he returned to work here in the United States. During the direct appeal process Dr. Sabir began preparing for habeas corpus relief. In 2012 he wrote to Mr. Hindess asking him to present an appeal to the many other United States expatriots living and working in Riyadh that knew Dr. Sabir. Specifically, Dr. Sabir asked them only to attest to what they knew of Dr. Sabir's ability to speak arabic. Sua sponte Mr. Shareef included in his letter that Dr. Sabir told him that he (Dr. Sabir) did not believe al-Qaeda was a real organization.

Exhibit A, 13, 15
Exhibit A, 9, 12
Exhibit A, 16
Exhibit A, 17
Exhibit A, 17
Exhibit A, 17, 22

In order for the jury to find Dr. Sabir guilty of conspiring to provide and attempting to provide material support to al-Qaeda it would have to have found that Dr. Sabir did so knowingly as a major element of the crime. Without that element the jury could not have legally found Dr. Sabir guilty of the crime. Had defense counsel not been negligent by dismissing Dr. Sabir's assertion out of hand

that he did not believe al-Qaeda was a real organization as "crazy", [Exhibit A, 20, 21] and as a result failing to investigate it, and incorrectly advising Dr. Sabir not to tell that to anyone, Dr. Sabir would have testified to it and Mr. Wilford would have found Mr. Shareef to testify to it [Exhibit A, 23] also, and probably others would have been found to testify as well.

The government's case in this respect is weak because it is based on an equivocal statement of a codefendant and unreasonable inferences on top of inferences. Dr. Sabir did not understand arabic, and by the government's own assertion at sentencing, the jury would not have found Dr. Sabir guilty had it believed Dr. Sabir's testimony at trial that he did not understand arabic. Had the jury heard testimony from Mr. Hindess and Mr. Shareef that Dr. Sabir [Exhibit B and C] did not understand arabic, then it is reasonable that the jury would have had reasonable doubt about that, and by the government's own admission, would not have found Dr. Sabir guilty.

Mr. Shareef's additional assertions [Exhibit C] further proves that Dr. Sabir did not knowingly conspire to and attempt to provide material support to al-Qaeda. If Mr. Shareef had testified and his testimony was [Exhibit A, 23] believed by the jury, the jury could not have found Dr. Sabir guilty, because Dr. Sabir did not even believe that al-Qaeda was a real organization. No reasonable juror could have found Dr. Sabir guilty of conspiring to and attempting to provide material support to an organization that he did not even believe was real. This shows that if Mr. Shareef's sworn statements [Exhibit C] are credible then Dr. Sabir's conviction is a manifest injustice; therefore Dr. Sabir is entitled to grant of this Rule 33 motion for a new trial.

| | |
|---|---|
| RAFIQ A. SABIR | ) 05 Cr. 673-2 (LAP) |
| | ) |
| v. | ) 12 Civ. 8937 (LAP) |
| | ) |
| UNITED STATES | ) |

## SWORN DECLARATION

1. I am Dr. Rafiq A. Sabir, defendant in United States v. Sabir in the above named criminal case, and petitioner in the present Rule 33 Motion For a New Trial.

2. I am writing this Sworn Declaration in support of my pro se Rule 33 Motion based on New Evidence and ineffective assistance of counsel.

3. The Statements in this Sworn Declaration are based on my personal knowledge and experiences, except where otherwise noted.

4. I first met Hassan Shareef around 2001 or 2002 at the Islamic Center of Boca Raton, Florida while we were both living in South Florida and regularly attending that Islamic Center for religious services.

5. I remember Mr. Shareef going to Riyadh, Saudi Arabia with his family in order for him to work there several months before I and my family went there for me to work there in April 2004.

6. While I was in Riyadh I and my family frequently visited with Mr. Shareef and his family.

7. Most of the streets in Riyadh have no name and most of the houses have no house number.

8. I did not know which street Mr. Shareef lived on when I was in Riyadh, and I could only get to his house using a hired driver that already knew where he lived.

9. After I returned to the United States in April 2005 I was arrested for the incident case, and I lost all contact with Mr. Shareef.

10. I was kept in solitary confinement from then until my transfer to FCI Ashland; and I was denied access to a law library until I reached FCI Ashland; thus, I could not do any research or investigation myself.

11. I gave my attorney Edward D. Wilford an extensive list of potential witnesses and a telephone number for a friend in Riyadh in order for him to investigate potential witnesses there, which he never used. (He told me he never called.)

12. I did not know that Mr. Shareef was still living and working in Saudi Arabia until I received his letter in February 2013; I received it in an envelope with another letter sent by Mr. Martin Clark Hindess; so I never had any address for Mr. Shareef.

13. Around the time of my trial Mr. Hindess began writing letters to me from Riyadh, Saudi Arabia.

14. I knew him and visited with him while I lived and worked in Riyadh.

15. When he wrote to me he gave me a post office box address to send letters back to him.

16. During my appeals process I began working on my habeas corpus petition.

17. As part of gathering evidence for that, I sent a letter to Mr. Hindess with an appeal for any Americans and others that I knew to write a letter describing what they knew of my ability to understand arabic while I was in Riyadh.

18. Only Mr. Hindess and Mr. Shareef responded to my appeal; Mr. Hindess said the others were too afraid to write anything.

19. Before my trial during an attorney visit I told my attorney Edward D. Wilford that I did not understand arabic, and that I did not believe al-Qaeda was a real organization.

20. I told Mr. Wilford that I discussed my belief with many people but I could not remember any particular person with whom I had discussed it.

21. Mr. Wilford told me, "Don't tell that to anyone – they will think you are crazy." That is why I did not testify to my belief at trial.

22. I was surprised when I read in Mr. Shareef's letter that he reported that I told him about my belief that al-Qaeda is not a real organization.

23. Mr. Hindess informed me that both he and Mr. Shareef would be willing to testify to the facts in their respective sworn statements.


I declare under penalty of perjury that the foregoing is true and correct. Executed on 22 October 2013

_____
Rafiq Sabir

Exhibit B

## To Whom It May Concern

I got to know Rafiq Sabir in Riyadh during 2004-2005. He was introduced to me through some ex-pat friends and I saw him quite regularly on Thursday evenings when a group of us would get together for dinner and a chat. He even came to my home with a bunch of these friends at least once.

At the time he was working as a doctor in one of Riyadh's hospitals. He came across as a dedicated and well-grounded individual who cared about his work. He wanted to bring his family out to Riyadh too. My lasting impression is of a mild mannered man who was friendly and who was keen to increase his knowledge of Islam.

Before travelling for his summer holiday in 2005, he had made known his plans to study Arabic. At the time he had no more than a grasp of the basic greetings and everyday pleasantries. When he returned, he stated that he would learn the language from scratch. He had even approached an American acquaintance, already fluent in Arabic, to teach him when he came back.

To the best of my knowledge, Rafiq had no violent tendencies, no grudge against the United States, and absolutely no connections or affiliations with terrorist organizations. He had come to Saudi Arabia to serve his profession, provide for his family, and to fulfil a long-term ambition to study Arabic in order to understand his religion from its source.

Rafiq has maintained his innocence of the charges against him throughout the time of his trial and his incarceration and I, for one, believe he is innocent of those charges.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 1st of August 2013.

Yours sincerely,

*[signature]*

**Martin Clark Hindess**, British Passport Holder #505105212
Contact address = PSU, PO Box 66833, Riyadh 11586, Saudi Arabia.

Exhibit C

Regarding Mr. Rafiq Sabir #55312-066
Federal Correctional Institution
Post Office Box 6001
Ashland, Kentucky 41105

To whom it may concern,

I am writing this letter on behalf of my friend, Dr. Rafiq Sabir. I met Rafiq in Florida around 2001 when we both attended the Islamic Center of Boca Raton. We met through the friendship of wives and found that we had children of similar ages. Rafiq was one of the few African American Muslims at ICBR and I guess you can say we hit it off pretty well. While he was a bit older, we were both relatively successful professionals, Muslim and living in sunny, Florida. Our busy schedules, his being a doctor and my being a community activist did not allow us to socialize much outside of the Islamic Center, but we did manage to spend a few nights together for dinner.

I found Rafiq to be very similar to me in that our knowledge of Islam was increasing due to our participation in weekly classes and individual study at ICBR but our Arabic language skills or rather, our lack of Arabic language skills, kept some of the more complex concepts out of our reach. We both found Islam after a period of time in the Nation of Islam that we came to understand was not the Islam brought by The Prophet Muhammad (PBUH) to the world over 1400 years ago. The Black Nationalist focus was a turn off for me and I believed him as well. Our conversations especially after September 11 centered on the conspiracy theories being floated around and the existence of Osama Bin Laden, who Rafiq always claimed to be a "boogey man". Neither of us could accept how the greatest country in the world with the most sophisticated military and intelligence apparatus could not capture someone that appeared on television more often than Jay Leno.

After Rafiq moved to Riyadh, where I was working at the time, we spent more time together and became very close. Our Arabic was still pretty bad and getting

worse because everyone we met wanted us to help them with their English. Opportunities to learn Arabic were also limited due to the long hours we worked. We became so close that he allowed me the use of his home and car during my vacation back in Florida in 2004.

During the four or so years we were together in Florida and Riyadh, I never once heard Rafiq express any desire to cause harm to anyone or any country and especially not the United States. He never expressed any desire to become a member of any terrorist networks or fight against the US government or people. In fact, he always expressed the belief that Al Qaeda was just a convenient tool of the media to frighten people about Arabs, Muslims and especially Islam.

Rafiq, from what I have seen with my own eyes while spending time with him and his family is a loving husband, father and a good Muslim. I am still shocked that he was convicted of the charges brought against him.

I hope that this letter provides some insight in to the true nature of my friend, Rafiq Sabir.

"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 14, 2013.

Hassan Shareef
10867 Murray Downs Court
Reston, VA 22182
571-214-7263

Digitally signed by
Hassan Shareef
Date: 2013.07.15
20:07:21 -04'00'

UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK

RAFIQ A. SABIR          05 Cr. 673-2 (LAP)

v.          12 Civ. 8937 (LAP)

UNITED STATES

---

## AFFIRMATION OF SERVICE

I, Rafiq A. Sabir, declare under penalty of perjury that I have served a copy of the attached Rule 33 Motion For a New Trial upon the United States Attorney, whose address is

         United States Courthouse Annex  
            One Saint Andrews Plaza  
       New York, New York   10007-1701

by First Class Mail.

Dated: 22 October 2013  
Ashland, Kentucky

_____  
Rafiq Sabir  
Federal Correctional Facility  
Post Office Box 6001  
Ashland, Kentucky   41105

RAFIQ SABIR #55312066
Federal Corrections Institution
Post Office Box 6001
Ashland, Kentucky 41105

⇨ 55312-066 ⇦
Clerk Of Court   S.D.N.Y.   ATTORNEY
500 Pearl ST
NEW YORK, NY 10007-1312
United States

7012 3460 0002 1482 2576

CERTIFIED MAIL™

RECEIVED
OCT 22 2013
BY:_____

Special Mail - Legal Mail
Do Not Open