USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 4/5/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAFIQ A. SABIR

12 Civ. 8937 (LAP)

v.

05 Cr. 673-2 (LAP)

UNITED STATES OF AMERICA

APR - 9 2014

PRO SE OFFICE

MOTION FOR EVIDENTIARY HEARING ON §2255 MOTION
MOTION FOR APPOINTMENT OF COUNSEL

Petitioner/Defendant Rafiq A. Sabir moves for an EVIDENTIARY HEARING on his §2255 Motion submitted 30 November 2012, docketted under the above captioned case number, as per Rule 8 of Rules Governing §2255 Proceedings. Dr. Sabir is a pro se petitioner, and so asks to have his petition and asserted issues construed liberally, according to the ruling in <u>Gordon v. Leeke</u>, 574 F.2d 1147 (4th Cir. 1978) stating that pro se petitioners are held to a less stringent standard than attorneys drafting such complaints. The Supreme Court held in <u>Rice v. Olsen</u>, 324 U.S. 786 (1945) that "[i]t is now established doctrine that pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated ...". A pro se complaint should not be dismissed summarily unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " <u>Hanes v. Kerner</u>, 404 U.S. 519 (1972)(<u>quoting from Conley v. Gibson</u>, 355 U.S. 41 (1957)). <u>Canty v. City of Richmond Va. Police Department</u>, 383 F.Supp. 1396 (E.D. Va 1974) held that "The Fourth Circuit takes the position that its district courts must be especially solicitous of civil rights plaintiffs ... this solicitude ... must be heightened when a civil rights plaintiff appears pro se. In the great run of pro se cases,

the issues are faintly articulated and often dimly perceived. There is, therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done ... [T]he district court must examine the pro se complaint to see whether facts alleged, or the set of facts which the plaintiff might be able to prove, could very well provide a basis for recovery under any of the civil rights acts .. Accordingly, the Court in considering the defendant's motion to dismiss will not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed."

Dr. Sabir is not a lawyer, and has no legal training and no legal experience; and he is struggling to understand case law and statutes with no professional guidance provided. Therefore, he begs the Court's indulgence to view his complaints according to whichever the correct statutes that are appropriate, although, out of ignorance he may have erroneously made a claim under the wrong statute and without the proper case law.

The Supreme Court held "... since it did not appear beyond doubt that the inmate could prove no set of facts in support of his claim which would entitle him to relief, he was entitled to an opportunity to offer proof." Haines v. Kerner, 404 U.S. 519 (1972).

And the Supreme Court held in per curiam that Fontaine was entitled to a hearing because the record did not "conclusively show" that he could not establish facts warranting relief under 28 USCS §2255. Fontaine v. United States, 411 U.S. 213 (1973).

And the Supreme Court held that "[u]nder §2255 providing that ... the court must grant a prompt hearing when such a motion is filed, determine issues, and make findings of fact and conclusions of law, unless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief, it is error to make findings on issues of fact, without notice and a hearing, where a prisoner serving 40 year term avers that he pleaded guilty upon an Assistant United States Attorney's promise that he would receive a sentence of no more than 20 years if he would plead guilty ... even though the Assitant United States Attorney emphatically denies making the promises ..."

"While as a general rule in post-conviction proceedings the question whether a federal prisoner has carried his burden of proof and shown his right to a discharge must be determined by the whole of the testimony, and not merely by the pleadings and affidavits, and the government's contention that his allegations are incredible cannot serve to deny him an opportunity to support them by evidence ...". Machibroda v. United States, 368 U.S. 487 (1962).

In United States v. Hayman, 342 U.S. 205 (1952) the Supreme Court stated, "We think the District Court did not proceed in conformity

with the provisions of 28 USCS §2255 when it made its findings on controverted issues of fact without notice to the petitioner and without a hearing."

"The factual allegations contained in petitioner's motion and affidavit, and put in issue by the affidavit filed with the government's response, relating primarily to purported occurences outside the courtroom and upon which the record could, therefore, cast no real light. Nor were the circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge and recollection." (Quoting Walker v. Johnston, 312 U.S. 275 (1941)).

"The government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence. On this record it is his right to be heard."

"And the Court adds, "... the specific and detailed factual assertions of the petitioner, while improbable, cannot at this juncture be said to be incredible ... The function of 28 USCS §2255 can be served in this case only by affording the hearing which its provisions require."

In order to facilitate the process of an evidentiary hearing Dr. Sabir moves the Court to appoint counsel as is required by Rule 8. Dr. Sabir has previously filed a MOTION FOR APPOINTMENT OF COUNSEL that was left unanswered by the Court as well

as by the Government. Furthermore, Dr. Sabir also previously filed a MOTION FOR A NEW TRIAL BASED ON NEW EVIDENCE which also requires appointment of counsel. (<u>Menefield v. Borg</u>, 881 F.2d 696 (9thCir. 1988)(Denial of appointment of attorney for motion for new trial post-conviction remanded because of violation of Sixth Amendment right to assistance of counsel. <u>Faretta v. California</u>, 422 U.S. 806, 45 L.Ed. 2d 562 (1975) "The right to counsel ... has been extended to various 'critical'stages ... An effective motion for a new trial ordinarily requires a lawyer's understanding of legal rules and his experience in presenting claims before a court ...").

BACKGROUND:

In May 2007 Petitioner/Defendant Dr. Rafiq Sabir was found guilty in a jury trial in the Southern District of New York of violating 18 USCS §2339B in conspiring to provide and attempting to provide material support to a designated FTO by volunteering to provide medical treatment to wounded al-Qaeda combatants in Saudi Arabia. The convictions were affirmed by the Second Circuit in February 2010 and certiorari was denied 5 December 2011. Currently, Dr. Sabir is serving a 300 month sentence, and 30 November 2012 he filed a timely 28 USCS §2255 Motion To Vacate the conviction and set aside the sentence due to numerous constitutional violations at trial. The Government responded 8 April 2013; and Dr. Sabir filed a reply 30 April 2013, Motion For Summary Judgment July 2013, Motion For Default Judgment September 2013, Motion For New Trial Based On New Evidence October 2013, and Summary Judgment and Default

Judgment on that with no response from either the Government or the Court on any of these motions. The Court has not made any decision on the §2255 Petition as yet, and Dr. Sabir has since learned that the Court will not grant summary judgment on §2255 motions and Rule 33 Motions. Consequently, Dr. Sabir now moves for Evidentiary Hearing based on the issues outlined below.

Petitioner who makes a claim that if proven would entitle him to relief is entitled to an evidentiary hearing in order to present evidence and to argue disputed facts. Disputes involving facts not in the record cannot be decided through affidavits. Assertions by Petitioner not opposed by Respondent/Government are conceded by the Government and taken as factual.

In arguing ineffective assistance of counsel pro se it is difficult for Petitioner to avoid relitigating the case. Often, in order to show prejudice a petitioner may feel compelled to prove facts that he wanted to have proven before the jury. For example, in the instant case defense counsel failed to provide an arabic language expert to translate arabic portions of conversation of 20 May 2005 recorded by undercover former FBI Agent Ali Soufan, and entered into evidence by the Government. Dr. Sabir contends that had the expert witness been provided by defense counsel at trial the expert would have shown that Dr. Sabir never said "al-Qaeda" in taking bay'ah (religious pledge) in arabic when he was attempting to repeat whatever Mr. Soufan was saying. Instead, with no personal knowledge of arabic himself and

failing to provide an arabic language expert in order to determine what was said, defense counsel pressured Petitioner into signing a stipulation immediately before trial that amounted to conceding the translation to whatever the FBI said, without even allowing Petitioner to read the stipulation or to think about it, and without discussing with Petitioner the potential risks of signing it. Critical to fully grasping the significance of this error is the fact that Dr. Sabir told defense counsel before trial that he did not even believe that al-Qaeda was a real organization, a fact that, if presented to and believed by the jury, would have made it impossible for any reasonable juror to conclude that Dr. Sabir intended to pledge support to al-Qaeda. Not only did defense counsel fail to investigate this claim of Petitioner, he immediately dismissed it derisively, and emphatically told Petitioner, "Don't tell that to anyone - they will think that you are crazy!"

Since filing his petition Dr. Sabir inadvertently came across a witness with whom he had no contact since he left Riyadh in April 2005, and is willing to testify that Dr. Sabir did not believe that al-Qaeda was a real organization. In addition, he, and another witness who knew Dr. Sabir when he was working in Riyadh in 2005, is willing to testify that Dr. Sabir did not in fact understand arabic as the Government claimed at trial. Defense counsel did nothing to contest this contention of the Government at trial, and that situation caused Petitioner to feel compelled to testify on his own behalf that he did not

understand arabic - testimony which the jury no doubt saw as self-serving and untruthful. Defense counsel's ineffectiveness on this issue of Misadvice must be judged in light of these facts.

While Petitioner would like to provide an arabic language expert at an evidentiary hearing, due to his indigent condition and his incarceration he cannot do so without being declared indigent by the Court and permitted to proceed in forma pauperis, as previously requested by Petitioner, and without appointment of counsel, also previously requested by Petitioner. Unless the Court is going to rule as Petitioner asserts, that signing the stipulation was a critical stage of the proceedings, Petitioner will have to show prejudice - which cannot be done effectively without counsel and funds as per the CJA §3006(A) to procure an arabic language expert. Without appointed counsel, even if Petitioner could get an arabic language expert pro bono, Petitioner would have no practical means to provide access to the recordings in evidence in order to analyze them and provide expert testimony based on that analysis that Dr. Sabir was prejudiced by defense counsel's erroneous and uninformed advice to sign the stipulation.

Petitioner asserts in his §2255 Motion that defense counsel's advice to sign that stipulation represented a critical stage of the trial according to the definition given by the Supreme Court, i.e. something that has strong and pervasive consequences throughout the proceeding. Petitioner asserts that the FBI translation was the linchpin in the Government's case at trial because the

jury could not understand arabic and therefore could not possibly have determined what Dr. Sabir said in the bay'ah (religious pledge); which meant that they impermissibly used the transcript as evidence instead of the recording in the absence of any contesting version and any opposition from defense counsel on cross-examination, even though Petitioner previously told him that he did not say "al-Qaeda" when taking the bay'ah and that he did not even believe that al-Qaeda was a real organization.

If the Court declines to rule that the stipulation was a critical stage of the proceeding and that therefore Petitioner must show prejudice, the Petitioner moves for an evidentiary hearing so that witnesses Hasan Shareef and (Yusuf) Martin HIndess can testify that Dr. Sabir did not understand arabic, and Mr. Shareef can testify that Dr. Sabir did not believe that al-Qaeda was a real organization in order to show prejudice. This testimony will show that Dr. Sabir could not have intentionally pledged support to al-Qaeda, and didn't know what was being said in arabic in the bay'ah. Also, if the Court will allow Petitioner to proceed in forma pauperis and appoints counsel, Petitioner would request an arabic language expert and access to the recording in evidence of the conversations from 20 May 2005 containing the bay'ah for analysis by that expert. Petitioner expects that the expert would testify that Dr. Sabir did not understand arabic and that he did not say "al-Qaeda" during the bay'ah, clearly showing that defense counsel's poor performance was prejudicial to Dr. Sabir and that Dr. Sabir is actually innocent of the charges of which

he now stands convicted.

GROUND TWO of Petitioner's §2255 Motion involved several issues:

1) The recording was altered by adding a statement by Ali Soufan, "there might be bullets", and therefore was inauthentic as evidence;

2) Dr. Sabir's training and experience would have shown that he did not volunteer to treat wounded combatants;

3) Ali Soufan asked Dr. Sabir what sounded like a hypothetical question, "would you treat mujahiddeen?";

4) Dr. Sabir did not offer his telephone number to Ali Soufan, rather Mr. Soufan persistently pestered Dr. Sabir for his telephone number, and it had nothing to do with treating anyone for anything.

Petitioner's main complaint regarding defense counsel's performance on this issue was his failure to provide an audio engineer to analyze the recording in evidence for tampering. This request by Petitioner to defense counsel is not a novelty in defending criminal cases. However, defense counsel's performance must be judged by the reasonableness of his failure and whether or not it was prejudicial.

Whether to provide particular witnesses at trial is a strategic decision to be made by counsel. Strategic decisions can only be strategic according to the knowledge of counsel; strategic decisions made by counsel on areas outside his/her knowledge base can only be strategic after investigation sufficient to

make the decision that particular witnesses would not have been helpful. In this case, counsel has not claimed, nor has the Government claimed that defense counsel has expertise in audio engineering. Therefore, the Government cannot claim that defense counsel made a strategic decision.

Prejudice can be shown by the likelihood that Petitioner would have proven his point as well as the impact that the statement in question had on the trial's outcome. Unless the Court is willing to appoint counsel to Petitioner and allow expert analysis and testimony as to whether the recording was altered, prejudice would have to be measured solely on the likely impact of the statement at trial. Dr. Sabir asserted at trial, and continues to assert that, as per his statement in the recording, he would only work within his expertise; and treatment of combat injuries is beyond his expertise. Since the jury found him guilty, it may be presumed that the jury did not believe him. Opposing Dr. Sabir's testimony was the statement by Ali Soufan on the recording in evidence, "there might be bullets", and Ali Soufan's testimony at trial that Dr. Sabir volunteered his telephone number after Mr. Soufan allegedly told Dr. Sabir about al-Qaeda's need for doctors.

From this analysis, it can be concluded that short of having the recording analyzed for tampering, Petitioner may be able to show prejudice by showing that:

1) Treatment of combat injuries is beyond Dr. Sabir's expertise;

2) Dr. Sabir did not volunteer to treat anyone;

3) Al-Qaeda was not even mentioned to Dr. Sabir at that time nor at any other time;

4) Dr. Sabir did not volunteer his telephone number;

5) Dr. Sabir giving his telephone number to Mr. Soufan was not associated with Mr. Soufan telling him about anyone's need for doctors.

While it may not be necessary to refute all of this testimony of Ali Soufan, clearly it can be seen by reviewing trial transcripts that defense counsel neglected to challenge or merely ineffectually challenged this testimony. Therefore, his poor performance begins with failing to analyze the recording for tampering and goes into failure to challenge before the jury in any significant way the Government's theory of the case.

In order to show prejudice Petitioner proffers new testimony and portions of the recording already in evidence from 20 May 2005 but not played to the jury. The new testimony which Dr. Sabir requested from defense counsel before trial, but he neglected to provide, would show that treating combat trauma is beyond Dr. Sabir's expertise. Evidence of tampering along with Dr. Sabir's statement on the recording and his testimony at trial that he is not qualified to treat combat trauma probably would have been sufficient to create reasonable doubt respecting guilt. By providing testimony and documentary evidence regarding Dr. Sabir's expertise at an evidentiary hearing Dr. Sabir believes he would show prejudice due to defense counsel's failure. Furthermore,

Petitioner would proffer the recordings of 20 May 2005 provided in discovery to show that al-Qaeda was not even mentioned to Dr. Sabir; Dr. Sabir did not volunteer to treat anyone; Dr. Sabir did not volunteer his telephone number.

Albeit all of this may not be necessary to show prejudice, but all of it certainly was available at trial, and would have impeached Ali Soufan's testimony and probably would have created reasonable doubt with the triers of fact respecting guilt. Therefore it all represents other separate grounds for ineffective assistance of counsel complained of by Petitioner within Ground Two. It shows specifically how defense counsel failed to challenge the Government's theory of the case before the jury at trial.

There is significant overlap between Ground Two and Ground Three in Dr. Sabir's habeas corpus petition. However, Ground Three focuses on Dr. Sabir's expertise and specific expert witnesses requested by him to defense counsel in order to challenge the practicality of the Government's claims. Again Petitioner acknowledges defense counsel's prerogative to make strategic decisions about expert witnesses. In this circumstance defense counsel provided evidence against himself in the form of a letter to the Court before trial for the experts requested by Petitioner. The letter is tantamount to an admission by defense counsel that such a strategic decision was beyond his knowledge base; it is also proof of his incompetence because any competent attorney would have known that such requests must be made in the form of a motion,

and a simple letter would be and was ignored by the Court.

While some of these experts would have been asked to testify at an evidentiary hearing in order to show prejudice in Ground Two, their testimony, along with a ballistics expert, would have shown that such treatment was beyond Dr. Sabir's experise and that anyone expecting Dr. Sabir to treat combat injuries was not in touch with or ignorant of reality. Quite probably, this Honorable Court is already aware of the prejudice suffered by Petitioner in this Ground, where the complaint is simply that the experts were not provided and that they would have shown the jury that Dr. Sabir could not have volunteered to treat combat injuries, particularly out of his apartment in Riyadh as claimed by the Government.

Ground Four Petitioner does not believe an evidentiary hearing is required because it is at least double hearsay, and it is clear from the record that defense counsel failed to object; the testimony of Samuel Nelson was the only evidence at trial for aiding and abetting. The Government did not claim any hearsay exception in this case, the witness seemed to settle on 2002 as the time of the alleged statement and he did not even testify as to who made the alleged statement. In any event, if such a statement was made it preceded when the Government initially alleged that a conspiracy began (some time in 2003) and certainly preceded when the Government stated the alleged conspiracy began in its closing arguments (March or April 2004).

Also it certainly preceded any discussion between the confidential informant and co-defendant Tarik Shah regarding a warehouse (January 2004); so Mr. Nelson's statement could not possibly have referred to that. The Government did not contest any of these arguments in responding to the Petitioner's §2255 Motion, so the matter should be considered conceded by the Government.

Ground Five: Abuse of Discretion.
Petitioner has no evidentiary issues on this Ground except regarding the peripheral issues of the alleged arrest record from Beacon New York and Dr. Sabir's alleged association with co-defendant Mahmoud Al-Mutazzim, which are central issues in Ground Six and so will be raised below.

Ground Six: Prosecutorial Misconduct.
There are no evidentiary issues for Parts A, B, D, and E, since any potential issues are presented above in Grounds One, Two, and Three.

In Part C of Ground Six Petitioner asserts that the Government knowingly presented a falsified arrest record in court before the jury. Along with that the Government made numerous other false and unsubstantiated allegations, including:
1) Dr. Sabir knew co-defendant Mahmoud Al-Mutazzim;
2) He and Al-Mutazzim spent years training together in martial arts;
3) Al-Mutazzim and co-defendant Tarik Shah were in Dr. Sabir's

       car at the time of the alleged arrest;

4) The three of them watched the al-Qaeda propaganda video "Martyrs of Bosnia".

The facts that Dr. Sabir would prove at an evidentiary hearing are that:

1) He was never arrested in Beacon, New York, and therefore the record presented in court by the Government was falsified;

2) Dr. Sabir never met Mahmoud Al-Mutazzim before, and so the Government's stories that they had a long-time relationship, spent years of training together, and they watched the al-Qaeda propaganda video together are all false.

These facts would be proven by testimony from Beacon Police Department and testimony from Mahmoud Al-Mutazzim. Proving these facts not only show prosecutorial misconduct, but also would show incompetence of trial counsel for failing to investigate these issues before trial.

SUMMARY:

Petitioner moves the Court for an evidentiary hearing in order to present evidence to show prejudice on Grounds One, Two, and Three through testimony of witnesses Hasan Shareef, (Yusuf) Martin Hindess, an arabic language expert, various medical experts; and in Grounds Five and Six in order to present factual evidence through testimony from Beacon Police Depart-

ment and Mahmoud Al-Mutazzim.

CONCLUSIONS:

Ground One claim of Misadvice was a critical stage of the proceeding; if the Court rules otherwise then Petitioner can show prejudice through proposed evidentiary hearing.

Ground Two and Three claim that counsel failed to provide effective assistance of counsel by failing to investigate and present relevant witnesses. Petitioner can show through testimony at an evidentiary hearing that defense counsel could have but did not present any opposition at trial to the Government's theory of the case, and such testimony likely would have resulted in a different outcome at trial.

Ground Four: Conceded by the Government.

Ground Five: From the record it appears to have been clear error and prejudicial to the Petitioner.

Ground Six: Petitioner believes that Parts A and B will be shown by evidence to be presented at an evidentiary hearing under Grounds One, Two and Three, and the record of all proceedings in this case. Part C Petitioner will show the extensive and unconscienable misconduct of the Government through the testimony of Beacon Police Department staff and co-defendant Mahmoud Al-Mutazzim, which Petitioner hopes will be sufficient to show that the Government should not be trusted to retry this case and should be barred from retrying it.

UNITED STATES DISTRICT COURT )
)
SOUTHERN DISTRICT OF NEW YORK )
)
)
)
RAFIQ A. SABIR ) 12 Civ. 8937 (LAP)
)
)
v. ) 05 Cr. 673-2 (LAP)
)
)
UNITED STATES OF AMERICA )
)

## AFFIRMATION OF SERVICE

I, Rafiq A. Sabir, declare under penalty of perjury that I have served a copy of the attached MOTION FOR EVIDENTIARY HEARING AND FOR APPOINTMENT OF COUNSEL upon the United States Attorney, whose address is:

      United States Courthouse Annex

      One Saint Andrews Plaza

      New York, New York  10007-1701

by FIRST CLASS MAIL.

Dated: 3 April 2014

Signature: _____
                 Rafiq Sabir

Address: Federal Correctional Institution

          Post Office Box 6001

          Ashland, Kentucky  41105






CERTIFIED MAIL™

7008 1830 0003 6495 4965    ATTORNEY

⇨55312-066
Clerk Of Court    SDNY
500 Pearl ST
NEW YORK, NY 10007-1312
United States

Postage

RAFIQ SABIR #55312-066
Federal Correctional Institution
Post Office Box 6001
Ashland, Kentucky 41105

RECEIVED
APR 03 2014
BY: 1046

SPECIAL MAIL - LEGAL MAIL
DO NOT OPEN