UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | | |
|---|---|---|
| RAFIQ SABIR, | : | |
| Movant, | : | 05 Cr. 673 (LAP) |
| -v.- | : | 12 Civ. 8937 (LAP) |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

------------------------------------------------------------X

**MEMORANDUM IN OPPOSITION TO DEFENDANT RAFIQ
SABIR'S MOTION TO AMEND HIS 28 U.S.C. § 2255 MOTION**


GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
Attorney for the United States
   of America


KARL METZNER
Assistant United States Attorney
- Of Counsel –

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | | |
|---|---|---|
| RAFIQ SABIR, | : | |
| Movant, | : | |
| -v.- | : | 12 Civ. 8937 (LAP) |
| UNITED STATES OF AMERICA, | : | 05 Cr. 673 (LAP) |
| Respondent. | : | |

------------------------------------------------------------X

## MEMORANDUM IN OPPOSITION TO DEFENDANT RAFIQ SABIR'S MOTION TO AMEND HIS 28 U.S.C. § 2255 MOTION

The Government respectfully submits this memorandum in opposition to Rafiq Sabir's motion for leave to amend his pending motion challenging his conviction under 28 U.S.C. § 2255.[1] Sabir seeks to amend his motion to add a claim of ineffective assistance of trial counsel based on trial counsel's failure to call Sabir's co-defendant, Tarik Shah, as a witness in Sabir's trial, and to add a claim of prosecutorial misconduct associated with an alleged failure to disclose exculpatory information. Sabir relies on a declaration from Shah in which Shah alleges that he made statements in a post-arrest proffer session that contradicted some of the numerous recorded incriminating and inculpatory statements Shah made to both an informant

---

[1] On August 23, 2018, this Court directed the Government to respond to "docket numbers 53 and 54." Those filings are identical, except that docket number 54 includes as an attachment the proposed amended motion.

and an FBI undercover agent during the investigation. For many of the same reasons set forth in the Government's Memorandum of Law in Opposition to Sabir's motion (Dkt. 49, filed July 23, 2017), Sabir's motion for leave to amend should be denied.

In resolving both Sabir's pending § 2255 motion and his motion for leave to amend it, the Government respectfully requests that the Court consider this Opposition as well as the Government's April 13, 2013 submission (Crim. Dkt. 193) and the Government's July 23, 2017 submission (Civ. Dkt. 49).

## Procedural History

Superseding Indictment S4 05 Cr. 673 (LAP) was filed against Sabir and three others on December 6, 2006, charging Sabir in two counts with conspiring to provide, and attempting to provide, material support to al Qaeda, in violation of 18 U.S.C. § 2339B. Trial commenced on April 27, 2007 and ended on May 21, 2007, when Sabir was convicted on both counts. On November 28, 2007, Sabir was sentenced principally to 300 months' imprisonment.

Sabir appealed his conviction to the Second Circuit, which rejected all of his claims and affirmed his conviction. *United States* v. *Farhane*, 634 F.3d 127 (2d Cir. 2011). Sabir then moved for rehearing and rehearing *en banc*, which was denied on May 12, 2011. Finally, Sabir sought a writ of certiorari from the United States Supreme Court, which was denied on December 5, 2011. Sabir affirms that he submitted his habeas motion to the prison mail system on November 30, 2012. The Government opposed Sabir's motion on April 13, 2013. (Crim. Dkt. 193).

After filing his initial motion, Sabir filed a number of variously-styled motions and efforts to supplement or amend his pending motion, and for other relief. By order dated July 29, 2016, this Court directed the Government to respond to nine of those submissions. (Civ. Dkt. 29). However, on September 7, 2016, Charles D. Swift, Esq. entered an appearance on Sabir's behalf. (Civ. Dkt. 32). In conjunction with that appearance, Mr. Swift asked for leave to file a memorandum of law on Sabir's behalf, explicitly requesting that the issues raised in that memorandum be considered in lieu of the "several ancillary motions" Sabir had filed pro se since filing his original § 2255 motion. (*See* Civ. Dkt. 32-1 at 2 ("it is likely (though not certain) that certain issues raise[d] in the pro se petition and motions would be dropped, thereby eliminating unnecessary briefing")). This Court granted that motion on September 13, 2016. (Civ. Dkt. 36).

After unopposed requests for extensions of time, Sabir's counsel filed his memorandum on May 22, 2017. (Civ. Dkt. 43). The Government filed its Memorandum in Opposition on July 23, 2017. (Civ. Dkt. 49). On August 28, 2017, Sabir filed his Motion for Leave to Amend his § 2255 Motion. (Civ. Dkt. 53 & 54).

### Factual Background

**A.     Sabir's 2255 Motion of November 30, 2012**

Sabir's 2255 motion, filed a few days short of one year after his conviction became final, raised several different claims, all of which were styled as variants of ineffective assistance of trial and appellate counsel. He claimed that counsel (1)

~ 3 ~

misadvised him; (2) improperly failed to obtain and use an Arabic translator as an expert witness; (3) failed to properly cross-examine Soufan re Sabir's knowledge of Arabic; (4) failed to challenge the authenticity of the recording of the May 20, 2005 meeting; (5) failed to call witnesses to establish that Sabir could not treat combat injuries or treat injured fighters in his apartment; (6) failed to object to certain testimony as being hearsay; (7) failed to request a mistrial regarding the admission of certain recordings and newspaper articles; and (8) failed to object to numerous instances of prosecutorial misconduct. (Civ. Dkt. 1 at 5-15). The Government responded to each of these claims in its April 13, 2013 opposition memorandum. (Crim. Dkt. 193).

B.  Sabir's August 2017 Motion to Amend

As part of his May 2017 Memorandum, Sabir attached an affidavit from his co-defendant, Tariq Shah, and argued that it reflected his actual innocence of his crimes of conviction. He also contended that the affidavit constituted newly-discovered evidence. The May 2017 Memorandum raised a new ineffective assistance claim, alleging that his trial counsel was ineffective in failing to call his co-defendant, Tarik Shah, to the stand, for the purpose of challenging Shah's invocation of his Fifth Amendment privilege against self-incrimination. (Mem. 18). The May 2017 Memorandum also raised a new claim of prosecutorial misconduct, alleging that the Government failed to produce exculpatory statements supposedly made by Shah during a proffer session with the Government. (Mem. 18-20).

Apparently recognizing that the existing § 2255 motion did not seek relief on the additional grounds argued in his May 2017 Memorandum, in August 2017 Sabir filed a motion for leave to amend his § 2255 motion to assert claims based on the new arguments made in the May 2017 Memorandum.

## Argument

Sabir's motion for leave to amend should be denied. Sabir's new claims—that an affidavit from his convicted co-defendant, Tarik Shah, somehow exculpates him, that his trial counsel provided ineffective assistance by failing to put Shah on the stand, and that the Government failed to produce exculpatory material—do not relate back to Sabir's original submission, because they have no factual connection to the claims made in that motion.

Sabir attempts to avoid the statute of limitations bar by claiming that the Shah affidavit proves Sabir's actual innocence of the charges, or that it qualifies as newly-discovered evidence and thus may be considered for that reason. Neither is true. The Shah affidavit merely provides self-serving claims from Shah regarding his crimes, and makes a bare, conclusory allegation that Sabir is not guilty. In any event, even accepting the dubious proposition that the Shah affidavit is newly available, that is not the same thing as newly discovered, and so the exception does not apply.

A.  **Applicable Law**

   1.  **Amendment of § 2255 Motions to Add Untimely Claims**

All claims raised in a motion attacking a federal defendant's sentence under 28 U.S.C. § 2255 are subject to a one-year statute of limitations, which runs from the latest of "(1) the date on which the judgment of conviction becomes final . . . . ; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f). Rule 15(c) of the Federal Rules of Civil Procedure "governs motions to amend where (as here, given the AEDPA) the statute of limitations for the underlying cause of action has already run." *Fama v. Commissioner of Correctional Services*, 235 F.3d 804, 815 (2d Cir. 2000). Under that rule, an amended claim will not be considered timely filed unless it "relates back" to the original, timely filing. *Id.* A claim raised in an otherwise untimely amended or supplemental filing does not "relate back" to the original filing "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005); Fed. R. Civ. P. 15(c). A new claim arises out of the same "conduct, transaction, or occurrence" as the original claims "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised episodes." *Mayle,* 545 U.S. at 645. "An amendment does not relate back merely because the proposed claims concern the same trial, or the same events presented or

~ 6 ~

occurring therein, as existing claims." *Ross v. Miller,* 2016 WL 1376611, at *20 (S.D.N.Y. Apr. 7, 2016); *see Mayle*, 545 U.S. at 662 ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, [the] limitation period would have slim significance."); *Gibson v. Artus*, 407 F. App'x 517, 519 (2d Cir. 2010). In particular, "[c]ourts have routinely held that ineffective assistance of counsel claims do not relate back when alleging a different ground for ineffective assistance of counsel." *Ross*, 2016 WL 1376611, at *20 (citing *Hiers v. Bradt,* 2014 WL 6804252, at *6 (E.D.N.Y. Dec. 3, 2014); *Jenkins v. Graham,* 2009 WL 1119383, at *3 (S.D.N.Y. Apr. 23, 2009)).

With respect to the operation of § 2255(f)(4), the question of when the factual predicate for a habeas claim was first discoverable is a fact-specific inquiry that requires a district court to analyze the factual bases of each claim and to determine when the facts underlying the claim were known, or could with due diligence have been discovered. *Rivas v. Fischer,* 687 F.3d 514, 535 (2d Cir. 2012). "[A] factual predicate consists only of the 'vital facts' underlying the claim. . . . [I]f new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a "factual predicate" for purposes of triggering the statute of limitations under § 2244(d)(1)(D). *Id.*

### 2. Actual Innocence

An untimely claim may nevertheless be considered if the defendant can establish "that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey* v. *Zant*, 499 U.S. 467, 494-95 (1991). The Supreme Court has repeatedly emphasized that by the term "fundamental miscarriage of justice," it means the defendant's "actual innocence." *See Herrera* v. *Collins*, 506 U.S. 390, 404 (1993) (referring to rule requiring "proper showing of actual innocence" as the "fundamental miscarriage of justice exception" and explaining that the purpose of the exception is "to see that federal constitutional errors do not result in the incarceration of innocent persons"); *Murray* v. *Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that the exception is reserved for those extraordinary cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent").

Furthermore, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley* v. *United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer* v. *Whitley*, 505 U.S. 333, 339 (1992)). This extremely narrow test is satisfied only if the defendant can demonstrate that his acts "have been ruled not to constitute criminal conduct." *Underwood v. United States,* 166 F.3d 84, 88 (2d Cir. 1999). A defendant "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. Unexplained delay in presenting new evidence bears on the determination whether the [defendant] has made the

~ 8 ~

requisite showing." *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quotation and citation omitted).

**B.  Discussion**

    **1.  Sabir's Claims Based on Shah's Affidavit Are Time-Barred**

Sabir's proposed amended motion was filed in August 2017, more than five years after Sabir's conviction became final. As a result, § 2255(f)(1) prohibits the proposed amended claims, unless the Shah claims somehow relates back to Sabir's timely-filed claims.

They do not. All of Sabir's original claims allege ineffective assistance of counsel in connection with various litigation decisions made by trial and appellate counsel, but none of them relate to the submission of exculpatory evidence from Shah, the decision not to force Shah to take the stand (even after being informed by Shah's attorney that Shah would invoke his Fifth Amendment rights against testifying), or the supposed suppression of Shah's supposedly exculpatory statements during a proffer session. As noted above, "[c]ourts have routinely held that ineffective assistance of counsel claims do not relate back when alleging a different ground for ineffective assistance of counsel." *Ross*, 2016 WL 1376611, at *20. Sabir's Shah-related claims therefore do not "relate back" to the claims in his original motion.

Sabir contends that the Shah affidavit constitutes "newly discovered evidence," and thus that his proposed amended motion is timely under 28 U.S.C. § 2255(f)(4) because it was filed within one year of "the date on which the facts supporting the

claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). But Shah's affidavit does not qualify as "newly discovered" evidence regardless of how recently Sabir obtained it.

Even assuming that Sabir's counsel exercised due diligence to obtain Shah's information and resulting affidavit, Shah's affidavit would only be "newly available," not "newly discovered." *See United States v. Forbes*, 790 F.3d 403, 407 (2d Cir. 2015) (interpreting Fed. R. Crim. P. 33). Where the defendant is aware of the existence of evidence before or during trial, it will not qualify as "newly discovered" if "there was a legal basis for the unavailability of the evidence at trial, such as the assertion of a valid privilege." *Id.* at 408. Indeed, the *Forbes* Court addressed this precise situation:

> Where, as here, a defendant is aware that a coconspirator could provide exculpatory testimony, but the coconspirator refuses to do so on the basis of his Fifth Amendment privilege, that testimony—made available post-conviction by the expiration of the statute of limitations as to that co-conspirator's alleged offenses—is not newly discovered after trial and, therefore, does not constitute newly discovered evidence within the meaning of Rule 33.

*Id.* at 409.

Sabir cannot credibly claim that he was unaware that Shah, were he to testify as Sabir hoped, would have given exculpatory testimony regarding their previous conversations and interactions. Once again, the Second Circuit has considered and rejected a virtually identical claim:

> Owen claims that prior to Samuels' sentencing hearing Owen "was unaware of Mr. Samuels' ability to exculpate him." This cannot be true. Owen was clearly aware of what he did and did not speak with Samuels and Baroody [about] on the days in question. If, as Owen claims, he did

~ 10 ~

> not discuss with Samuels or Baroody a plan to ship marijuana to Florida, he would have known prior to trial that both Samuels and Baroody could have attested to this fact. Owen was at all times aware of Samuels' "ability" to exculpate him, but was unable to benefit from Samuels' testimony because Samuels did not make it available until after the trial was over. In these circumstances, Samuels' testimony is not newly discovered evidence within the meaning of Rule 33.

*United States v. Owen*, 500 F.3d 83, 91 (2d Cir. 2007). As Sabir acknowledges, his trial counsel sought to call Shah as a witness, advising the court that Shah's attorney had represented that, if called, Shah would assert his Fifth Amendment rights. (Mem. 10). Sabir would not have sought Shah's testimony unless he believed it would help him. Shah's affidavit is therefore not "newly discovered," and so the provisions of 28 U.S.C. § 2255(f)(4) do not apply to save that claim from the statute of limitations bar. *See id.* ("But where, as in this case, a defendant knew or should have known, that his codefendant could offer material testimony as to the defendant's role in the charged crime, the defendant cannot claim that he 'discovered' that evidence only after trial.").[2]

### 2. Shah's Affidavit Does Not Prove Sabir's "Actual Innocence"

Sabir contends that the Shah affidavit proves that he is actually innocent of the material support for terrorism charges for which he was convicted, and therefore

---

[2] Sabir cites "judicial economy" as a basis for allowing his proposed amendment, claiming that he could just file a separate motion asserting these grounds for relief. (Dkt. 54 at 5). Although Sabir is free to file any motion he wishes, any such second motion would be untimely for the same reasons, and also would be required to satisfy the requirements for filing second-or-successive motions for relief under 28 U.S.C. § 2255(h).

is exempt from the otherwise-applicable time bar of § 2255(f). (Dkt. 54 at 5). To the contrary, Shah's single conclusory statement—"I refused and attempted to vindicate Sabir"—falls far short of undermining Sabir's own words, recorded as they were uttered, pledging loyalty to the al Qaeda terrorist organization, and offering to make himself available to tend to the injuries of those terrorists while in Saudi Arabia, where al Qaeda was actively operating, going so far as to encode his cell phone number on a piece of paper and give it to a person Sabir believed to be an al Qaeda recruiter.

Shah's affidavit claims that Shah lied repeatedly to the FBI during the investigation. In doing so, he essentially disavows his own guilty plea, in which he admitted that he conspired to provide material support to the al Qaeda terrorist organization. Such affidavits—submitted by a convicted co-conspirator, long after any credible threat of further prosecution has passed—are worthy of little if any weight. *See, e.g., Drew v. State,* 743 S.W.2d 207, 228 (Tex. Crim. App. 1987) ("It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement.").

Shah's affidavit, which consists of little more than "anything I told the FBI about Sabir was a lie, and he didn't do it," squarely contradicts the substantial evidence proving Sabir's guilt, which the Second Circuit summarized when affirming Sabir's conviction on direct appeal:

> On May 20, 2005, during a visit to New York, Sabir met with Saeed and Agent Soufan at Shah's Bronx apartment. Sabir told Soufan that he

> would soon be returning to Riyadh. He expressed interest in meeting with *mujahideen* operating in Saudi Arabia and agreed to provide medical assistance to any who were wounded. *See* GX 906T at 15, 87. He suggested that he was ideally situated to provide such assistance because he would have a car in Riyadh and "carte blanche" to move freely about the city. *Id.* at 67.
>
> To ensure that Shah and Sabir were, in fact, knowingly proffering support for terrorism, Soufan stated that the purpose of "our war, ... our *jihad* " is to "[e]xpel the infidels from the Arabian peninsula," *id.* at 22, and he repeatedly identified "Sheikh Osama" (in context a clear reference to Osama bin Laden) as the leader of that effort, *see, e.g., id.* at 31, 34, 59, 87, 98–99. Shah quickly agreed to the need for war to "[e]xpel the Jews and the Christians from the Arabian Peninsula," *id.* at 22, while Sabir observed that those fighting such a war were "striving in the way of Allah" and "most deserving" of his help, *id.* at 66.
>
> To permit *mujahideen* needing medical assistance to contact him in Riyadh, Sabir provided Soufan with his personal and work telephone numbers. *See id.* at 40, 83. When Shah and Soufan noted that writing down this contact information might create a security risk, Sabir encoded the numbers using a code provided by Soufan. *See id.* at 49–53.
>
> Sabir and Shah then participated in *bayat,* a ritual in which each swore an oath of allegiance to al Qaeda, promising to serve as a "soldier of Islam" and to protect "brothers on the path of *Jihad* " and "the path of al Qaeda." *Id.* at 106–08, 114–16. The men further swore obedience to "the guardians of the pledge," whom Soufan expressly identified as "Sheikh Osama," *i.e.,* Osama bin Laden, and his second in command, "Doctor Ayman Zawahiri." *Id.* at 98, 108–10, 115.

*Farhane*, 634 F.3d at 133.

No hearing is necessary to reject Sabir's motion to amend. The overwhelming evidence of his guilt, provided principally through recordings of his own statements, demonstrates that no rational jury, if presented with Shah's testimony, would have determined that Sabir was actually innocent. Other courts have similarly rejected such codefendant affidavits in support of habeas motions. *See, e.g., Allen v. Yukins*,

~ 13 ~

366 F.3d 396, 406 (6th Cir. 2004) ("Allen's evidence of her alleged innocence consists of two postconviction affidavits from her codefendants. One affidavit is facially insufficient to establish that Allen is innocent; the other is inherently unreliable and contradicted by the evidence presented at trial. In light of the foregoing, we conclude that a reasonable juror could easily find beyond a reasonable doubt that Allen is guilty of assault with the intent to commit murder."); *Carter v. Virginia,* 2010 WL 331758, at *6 (E.D. Va. Jan. 26, 2010) ("Given Davis's prior statements implicating Carter in the murder of Bailey and the timing of Davis's affidavit, the Court concludes that Davis's affidavit is not 'trustworthy' and does not constitute 'reliable' evidence of innocence sufficient to support a claim of actual innocence... To accept such commonplace declarations would ignore the Supreme Court's admonition that the quality of evidence necessary to support a claim of actual innocence 'is obviously unavailable in the vast majority of cases.'") (citing *Schlup v. Delo,* 513 U.S. 298, 324 (1995)). Sabir is not innocent of the charges for which he was convicted.

### 3. Any Exculpatory Information From Shah Was Immaterial

Sabir relies on the Shah affidavit—and nothing else—to claim that Shah supposedly exculpated him during a proffer session with the Government, and that the Government therefore committed prosecutorial misconduct in failing to advise Sabir of Shah's statements. Although the Government categorically denies that it failed to satisfy its disclosure obligations, this Count need not delve into that factual

question, because even assuming that Sabir's claim is correct, events would still have unfolded precisely as they did in 2007.

Assuming that Shah had indeed attempted to exculpate Sabir during Shah's proffer sessions, the Government would have disclosed that information to Sabir. Of course, as noted above, because Sabir knew full well what conversations he had had and had not had with Shah, he did not need to hear third-hand through the Government what Shah was saying about their discussions. *See Owen*, 500 F.3d at 91. But putting that aside, even armed with such "exculpatory" information, Sabir could only have done one thing: attempt to call Shah as a defense witness. That is, of course, exactly what his trial counsel did. Sabir's attorney contacted Shah's lawyer, and received the message that there was no point in calling Shah, because he would just take the Fifth. Sabir's lawyer memorialized that in a representation to this Court. As a result, Shah was not available to be a witness at Sabir's trial, even if he had had "exculpatory" testimony to provide.

To reiterate, the Government does not agree that it failed to disclose anything. But Sabir's claim can and should be rejected without considering that question, because he already knew what agreements and interactions he had had with Shah, he had already tried and failed to obtain Shah's testimony at his trial, and there are no grounds on which Sabir could have offered Shah's supposedly exculpatory statements without Shah having been a witness. So Sabir cannot have suffered any prejudice from any such disclosure failure by the Government.

~ 15 ~

## Conclusion

For the foregoing reasons, the Government respectfully submits that Sabir's motion for leave to amend his motion seeking relief under 28 U.S.C. § 2255 should be denied.

Dated:  New York, New York
        September 13, 2018

                    Respectfully submitted,

                    GEOFFREY S. BERMAN
                    United States Attorney


            By:     /s/_____
                    Karl Metzner
                    Assistant United States Attorney
                    (212) 637-2476